UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WE THE PATRIOTS USA, INC.,
DIANE BONO,
MICHELLE MELENDEZ,     Dkt. No.:1:21-cv-4954
MICHELLE SYNAKOWSKI,
    Plaintiffs,
v.

KATHLEEN HOCHUL - GOVERNOR
OF NEW YORK; HOWARD
ZUCKER, M.D, - COMMISSIONER,
NEW YORK STATE DEPARTMENT
OF HEALTH
    Defendants.     SEPTEMBER 13, 2021

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

The Plaintiffs respectfully request the Court to immediately issue an injunction pending appeal to Federal Rule of Civil Procedure 62(d) staying enforcement of New York State Health Regulation, Title 10, § 2.61.

### Factual Background

On August 16, 2021, then New York Governor Andrew Cuomo promised New York health care workers that the state's coming COVID-19 vaccine mandate for healthcare workers would allow for "limited exceptions for those with religious or medical reasons." **Exhibit B, pp. 1-2.** On August 26, 2021, the Defendants promulgated New York State Health Regulation, Title 10, § 2.61 with no public notice and comment period. The regulation departed drastically from then Governor Cuomo's promises by eliminating religious exemptions for healthcare workers when it comes to the Defendants' COVID-19 vaccination mandate. **Exhibit A, p. 2**

1

New York State Health Regulation, Title 10, § 2.61 covers "any facility or institution included in the definition of 'hospital' … including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers.…" *Id*. at p. 1. It applies to

> all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.

*Id*. at p. 2. The regulation requires "[c]overed entities … [to] continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent receipt of an exemption as allowed.…" *Id*. at p. 2.

The only exemption that New York State Health Regulation, Title 10, § 2.61 provides is a "medical exemption." *Id*. at p. 2.

***Vaccines – Ingredients:***

The three major COVID-19 vaccines – Johnson & Johnson (Janssen), Pfizer, and Moderna – use cells artificially developed using fetal cells taken from aborted fetuses in the 1970s and the 1980s in their testing, manufacture, or both. *See COVID-19 Vaccines & Fetal Cells*, Michigan Department of Health & Human Services.[1]

Johnson & Johnson used an aborted fetal cell line to produce and manufacture its vaccine. *Id*. Pfizer and Moderna did not use an aborted fetal cell line to produce and

---

[1] https://www.michigan.gov/documents/coronavirus/COVID-19_Vaccines_and_Fetal_Cells_031921_720415_7.pdf

2

manufacture their vaccines, but they did use an aborted fetal cell line to confirm its efficacy prior to producing and manufacturing it. *Id*.

### Northwell Health & Plaintiffs Diane Bono & Michelle Melendez:

Plaintiff Diane Bono is a registered nurse at Syosset Hospital in New York and is employed by Northwell Health. **Exhibit C – Affidavit of Diane Bono, ¶ 3**. She is a practicing Christian and believes in "the sanctity of life, born and unborn." *Id*. at ¶ 5. She believes that abortion is morally evil and that its fruits are as well. *Id*. at ¶ 5. As such, she has a sincere religious objection to taking any of the available COVID-19 vaccines because they use aborted fetal cell lines. *Id.* at ¶ 6. On August 23, 2021, she submitted a request for a religious exemption from New York's COVID-19 vaccination mandate to Northwell Health. **Exhibit D – Religious Exemption Denial For Diane Bono**. Northwell Health denied her religious exemption on August 31, 2021 and explained why:

> We have received your request dated August 23, 2021 for an accommodation in the form of a religious exemption from New York State's mandate that requires all health care personnel receive their first dose of the COVID-19 vaccine by September 27, 2021. On August 18, 2021, the New York State Department of Health ("DOH") issued this mandate under Section 16 of the Public Health Law. However, on August 26, 2021 the DOH announced that religious exemptions are not permitted under the State mandate. It is for this reason that we are unable to grant your request for a religious exemption.

*Id*.

It then delivered her an ultimatum: "If you choose to not receive your first shot between now and September 27, 2021, you will be non-compliant with the NYS mandate and your continued employment will be at risk." *Id*.

Bono has elected not to comply with the Defendants' mandate because it would violate her religious beliefs. **Exhibit C, ¶ 7.** Her choice will subject her to the termination

of her current employment and will bar her from obtaining other employment as a nurse unless she yields and receives a COVID-19 vaccination. *Id*. at ¶ 9.

Plaintiff Michelle Melendez is a registered nurse at Syosset Hospital in New York and is employed by Northwell Health. **Exhibit E – Affidavit of Michelle Melendez, ¶¶ 2-3**. She is a practicing Catholic and believes in "the sanctity of life, born and unborn." *Id*. at ¶¶ 4-5. She believes that abortion is morally evil and that its fruits are as well. *Id*. at ¶ 5. As such, she has a sincere religious objection to taking any of the available COVID-19 vaccines because they use aborted fetal cell lines. *Id.* at ¶ 6. On August 22, 2021, she submitted a request for a religious exemption from New York's COVID-19 vaccination mandate to Northwell Health. **Exhibit F – Religious Exemption Denial For Michelle Melendez**. Northwell Health denied her religious exemption on August 31, 2021 and explained why:

> We have received your request dated August 22, 2021 for an accommodation in the form of a religious exemption from New York State's mandate that requires all health care personnel receive their first dose of the COVID-19 vaccine by September 27, 2021. On August 18, 2021, the New York State Department of Health ("DOH") issued this mandate under Section 16 of the Public Health Law. However, on August 26, 2021 the DOH announced that religious exemptions are not permitted under the State mandate. It is for this reason that we are unable to grant your request for a religious exemption.

*Id*.

Northwell Health, however, did not issue the same direct ultimatum to Melendez as it did to Diane Bono. Melendez, however, believes that, like Bono, she will be terminated on or after September 27, 2021 if she refuses to get a COVID-19 vaccine. **Exhibit E, ¶ 8.**

Melendez has elected not to comply with the Defendants' mandate because it would violate her religious beliefs. *Id*. at ¶ 7. Her choice will subject her to the termination of her current employment and will bar her from obtaining other employment as a nurse unless she yields and receives a COVID-19 vaccination. *Id*. at ¶ 9.

*Michelle Synakowski:*

Michelle Synakowski is a registered nurse employed at St. Joseph's Hospital in New York. **Exhibit G – Affidavit of Michelle Synakowski**. She is a practicing Catholic and believes in "the sanctity of life, born and unborn." *Id*. at ¶¶ 4-5. She believes that abortion is morally evil and that its fruits are as well. *Id*. at ¶ 5. As such, she has a sincere religious objection to taking any of the available COVID-19 vaccines because they use aborted fetal cell lines. *Id.* at ¶ 6. She will not comply with New York's vaccination mandate, and her employer has informed her that it will terminate her employment on September 21, 2021 if she does not receive the vaccine because it is required to do so by New York State Health Regulation, Title 10, § 2.61. *Id*. at ¶¶ 7-8. Her choice will subject her to the termination of her current employment and will bar her from obtaining other employment as a nurse unless she yields and receives a COVID-19 vaccination. *Id*. at ¶ 9.

*Procedural History:*

On September 2, 2021, the Plaintiffs filed this action seeking injunctive relief to stay enforcement of New York State Health Regulation, Title 10, § 2.61. Dkt. 2. On September 12, 2021, they filed a motion for an emergency temporary restraining order and for a preliminary injunction. Dkt. 6. The Court denied that motion on September 12, 2021 without opinion. The Plaintiffs then filed a notice of appeal that same day. Dkt. 8.

5

**Argument**

Fed. R. Civ. P. 62(d) provides that, while an appeal is pending from an interlocutory order that refuses an injunction, the Court may grant an injunction on terms that secure the opposing party's rights. *See also Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991). Much like a preliminary injunction, the Second Circuit has established four factors that the Court must consider: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal, and (4) the public interests that may be affected." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994).

The Plaintiffs more than satisfy this test.

**I.     THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT GRANT THEIR REQUEST FOR A TEMPORARY RESTRAINING ORDER.**

To show irreparable harm, the Plaintiffs must show that, absent a temporary restraining order, they will "suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id*. at 118-19. Courts will presume that a movant has established irreparable harm in the absence of injunctive relief when the movant's claim involves the alleged deprivation of a constitutional right. *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). In particular, the Supreme Court has stated that "[t]he loss of First Amendment freedoms,

for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Plaintiffs here are entitled to the presumption of irreparable harm in the absence of injunctive relief because they have alleged that they will be wholly deprived of their constitutional rights to the free exercise of religion, privacy, and medical freedom.

The Plaintiffs also show actual and imminent harm that is irreparable and caused by New York State Health Regulation, Title 10, § 2.61 because they will be terminated and barred from working as healthcare professionals in New York unless they receive COVID-19 vaccinations in violation of their religious beliefs. This harm is imminent as at least one plaintiff – Michelle Synakowski – will be terminated on September 21, 2021 and the other two plaintiffs – Diane Bono and Michelle Melendez – will be terminated on September 27, 2021. No amount of money will repair the damage caused by such terminations and the subsequent bar for the Plaintiffs to reenter the healthcare field in New York.

**II.    NO PARTY WILL SUFFER SUBSTANTIAL INJURY IF THE COURT ISSUES AN INJUNCTION PENDING APPEAL.**

For more than a year and a half, healthcare workers in New York have successfully and safely delivered health care to patients during the COVID-19 pandemic. They have not suddenly lost their ability to be professional and deliver safe care to patients. Nor have hospitals lost the ability to make operational decisions regarding on how to maximize the protection of patients while respecting the Plaintiffs' religious beliefs. In other words, a COVID-19 vaccination is no magic antidote.

While the Defendants have mandated that all healthcare workers receive a COVID-19 vaccination, they will not suffer a substantial injury if a portion of New York's

7

healthcare workers go unvaccinated, but follow the Defendants' other health guidelines as they have done throughout the COVID-19 pandemic. The Defendants also have other options to protect their interests while the Plaintiffs pursue their appeal like requiring unvaccinated healthcare workers to only work with certain low-risk populations. Instead of creating a system of reasonable accommodation, they have created a system of unreasonable termination.

The Defendants cannot claim in good faith that they will suffer a substantial injury. The past year and a half show otherwise.

## III. THE PLAINTIFFS SHOW A SUBSTANTIAL POSSIBILITY OF SUCCESS ON THE MERITS OF THEIR CLAIMS.

### A. Supreme Court Precedent Does Not Establish A Public Health Emergency Exception To The First Amendment.

The U.S. Supreme Court has reshaped its decisions in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), *Zucht v. King*, 260 U.S. 174 (1922), and *Prince v. Massachusetts*, 321 U.S. 158 (1944) over the last year. It has clearly established that, even during a public health emergency, the First Amendment's prohibition on the attachment of special disabilities to religion still applies in full force. *See Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889(Mem) (Dec. 3, 2020) (granting certiorari and adopting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) as its decision). In other words, a state's assertion of a public health emergency interest does not swallow the First Amendment even when it comes in the form of a vaccine mandate.

The U.S. Supreme Court has also indicated that *Jacobson* and *Zucht* involved assertions of different rights than the ones that the Plaintiffs assert here. As Justice Gorsuch pointed out in his *Cuomo* concurrence and as *Jacobson* itself makes clear,

8

Henning Jacobson only asserted a generalized Fourteenth Amendment liberty interest claim in *Jacobson*, not a First Amendment claim, a suspect classification claim, or a claim of a fundamental right. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). Justice Gorsuch then makes the following observation:

> Put differently, *Jacobson* didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so. Instead, Jacobson applied what would become the traditional legal test associated with the right at issue—exactly what the Court does today. Here, that means strict scrutiny: The First Amendment traditionally requires a State to treat religious exercises at least as well as comparable secular activities unless it can meet the demands of strict scrutiny—showing it has employed the most narrowly tailored means available to satisfy a compelling state interest.

*Id*. at 70.

Likewise, in *Zucht v. King*, 260 U.S. 24 (1922), Rosalyn Zucht only asserted a generalized Fourteenth Amendment liberty claim against a school vaccination mandate and a vague equal protection claim. The *Zucht* Court relied on *Jacobson* to reject her claim.

When the Supreme Court decided *Jacobson*, it had not given full force and meaning to the precise nature of the Fourteenth Amendment. The incorporation of the Bill of Rights and strong protections for fundamental unenumerated rights did not exist at the time that the Supreme Court decided *Jacobson* and *Zucht*. Thus, the controlling jurisprudence at the time meant that the Supreme Court did not examine unenumerated rights or enumerated rights guaranteed by the Fourteenth Amendment because it did not interpret the Fourteenth Amendment as protecting either form of individual rights.

Incorporation and the Supreme Court's substantive due process doctrine has changed the impact that *Jacobson* and *Zucht* have on First Amendment cases. The Supreme Court has indicated as much even though it has not specifically done so in a

9

vaccine mandate case. *See, e.g.*, *Tandon v. Newsom*, 141 S. Ct. 1294 (Apr. 9, 2021); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889(Mem) (2020); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). There is a substantial possibility that either the Second Circuit or the Supreme Court will find that New York State Health Regulation, Title 10, § 2.61 creates similar circumstances requiring its intervention as discussed below.

### B. New York State Health Regulation, Title 10, § 2.61 Targets Religion For A Special Disability In Violation Of The First Amendment Because It Allows Healthcare Workers To Claim A Medical Exemption, But Not A Religious One.

Although the First Amendment does not entitle religious observers to special dispensations from general criminal laws because of their religion, "[t]he Free Exercise Clause protect[s] religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2019 (2017) (internal citation and quotation marks omitted); *see also Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990). Thus, laws may not discriminate against "some or all religious beliefs." *Trinity Lutheran*, 137 S.Ct. at 2021 (quoting *Church of Lukumi Babulu Aye, Inc. v. Hialeah*, 508 U.S. 520, 532 (1993)). Laws that discriminate in such a manner are subject to the strictest scrutiny. *Id*. at 2019. Thus, the analysis of First Amendment Free Exercise claims begins with an analysis of whether a law is neutral and of general applicability. *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1876 (Jun. 17, 2021).

"A law is not generally applicable if it invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized

10

exemptions." *Fulton*, 141 S. Ct. at 1877 (internal quotation marks and citations omitted). "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*. While it is true that all laws are somewhat selective, the Supreme Court has held that specific "categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993).

At least one circuit court has previously held that the grant of a medical exemption, but not a religious exemption, violates the neutrality and general applicability requirements of the Free Exercise Clause. In *Fraternal order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3rd Cir. 1999), now-Justice Samuel Alito held that a police department's medical exemptions from a shaving policy, but denial of religious exemptions, constituted a set of individualized exemptions within the meaning of *Lukumi*. Of particular concern to Justice Alito and his fellow Third Circuit judges was when "the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection, but not for individuals with a religious objection." *Id*. at 365. Thus, they held that such a categorical distinction triggered strict scrutiny because the medical exemption undermined the government's interests in the same way that the religious exemption did. *Id*.

Additionally, in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (Apr. 2021), the Supreme Court held that whether two activities or exemptions are comparable for

11

purposes of a Free Exercise Clause analysis is determined by the risks that they pose, not the reasons for giving them.

In their public statements justifying New York State Health Regulation, Title 10, § 2.61, the Defendants have argued that a mandatory COVID-19 vaccination for healthcare workers is necessary to protect public health. This argument, however, falter under New York State Health Regulation, Title 10, § 2.61's system of individualized exemptions that entertains requests for secular (medical) exemptions while categorically excluding requests for religious exemptions.

The empty platitudes that the Defendants have offered the public ignore reality. Regardless of whether a healthcare worker claims a medical or a religious exemption, they enter hospitals and other covered entities unvaccinated and, in the Defendants' eyes, more likely to spread COVID-19 than their peers. COVID-19, and the spread of COVID-19, will not inquire as to a healthcare worker's reasons for being exempt from the Defendants' COVID-19 vaccination requirement. As set forth in *Tandon*, the law does not inquire why either when considering which level of constitutional scrutiny to apply. The plain truth of the matter is that the Defendants consider all unvaccinated healthcare workers to be a public health risk because of their increased likelihood to spread contagious disease.

Because New York State Health Regulation, Title 10, § 2.61 provides a system of individualized exemptions, *Fulton* clearly mandates the conclusion that it is not a regulation of neutral and general applicability. Thus, Supreme Court precedent requires the Court to apply strict scrutiny to New York State Health Regulation, Title 10, § 2.61.

It cannot survive strict scrutiny. Under a strict scrutiny analysis, a government defendant must show that the challenged law is narrowly tailored to further a compelling government interest. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 172 (2015). New York State Health Regulation, Title 10, § 2.61 fails on both elements.

First, the Defendants likely will claim a compelling interest in preventing the spread of COVID-19 and its variants in the healthcare community. As discussed above, however, they undermine the compelling nature of their interest by allowing healthcare workers to claim medical exemptions from their COVID-19 vaccination mandate. Once again, COVID-19, and the spread of COVID-19, will not inquire as to a healthcare worker's reasons for being exempt from the Defendants' COVID-19 vaccination requirement. By allowing medical exemptions, the Defendants have failed to state a compelling interest strong enough to infringe on the Plaintiffs' First Amendment rights.

Second, New York State Health Regulation, Title 10, § 2.61 does not even abide in the same universe as narrow tailoring does. The Defendants willingly provide accommodations to healthcare workers claiming medical exemptions, but mandate the termination of healthcare workers claiming religious exemptions and then bar them from working in healthcare until they bow to the COVID-19 vaccination mandate. Even assuming *arguendo* that the Defendants could constitutionally impose stricter requirements on healthcare workers who receive religious exemptions, the Defendants had many ways to limit their risk to public health. The Defendants could have required all exempt healthcare workers to work only with low-risk populations in the healthcare system. It could have required them to submit to regular COVID-19 testing, masking, and other restrictions.

They chose to do none of these things and completely ignored the fact that healthcare workers such as the Plaintiffs delivered quality and safe healthcare throughout the COVID-19 pandemic without being vaccinated. Last year, the Defendants categorically lauded the Plaintiffs as heroes. This year, they are trying to fire them with no consideration of how they can accommodate them. The First Amendment requires narrow tailoring, and the Defendants have not made any good faith efforts to narrowly tailor New York State Health Regulation, Title 10, § 2.61.

The Supreme Court's decision in *Fulton* clearly indicates that the Defendants' behavior is constitutionally impermissible, and its decisions in *Tandon v. Newsom*, 141 S. Ct. 1294 (Apr. 9, 2021); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889(Mem) (2020); and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) illustrate that *Fulton*, rather than *Jacobson* and *Zucht*, and its predecessors control. Under these cases and the rule that they establish, the Plaintiffs have a substantial possibility of prevailing on appeal, and the Court should issue an injunction prohibiting the Defendants from enforcing New York State Health Regulation, Title 10, § 2.61 while this appeal remains pending.

### C. New York State Health Regulation, Title 10, § 2.61 Violates The Plaintiffs' Fourteenth Amendment Rights To Privacy And Medical Freedom.

The Supreme Court unequivocally established a fundamental right to privacy in the First, Fourth, Fifth, Ninth, and Fourteenth Amendments in *Roe v. Wade* and prior decisions. *See Roe v. Wade*, 410 U.S. 113, 152-53 (1973). While its precedents only covered matters pertaining to marriage, procreation, contraception, family relationships, and child rearing and education, the *Roe* Court refrained from confining it to just those

areas. *Id*. at 152-53. The *Roe* Court then elaborated on the medical nature of the decision that a woman must make on whether to elect an abortion:

> This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy. The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved. All these are factors the woman and her responsible physician necessarily will consider in consultation.

*Id*. at 153.

The Supreme Court then reaffirmed its decision in *Planned Parenthood v. Casey*, 505 U.S. 833 (1992) and describe the choice on whether to get an abortion as one of the "most intimate and personal choices that a person may make in a lifetime, choices central to personal dignity and autonomy." *Id*. at 851. Although the *Casey* Court located the right to an abortion under a Fourteenth Amendment liberty theory, it did not cast doubt on *Roe's* formulation of the right as a right to privacy. *Id*. at 852-853.

Under these decisions, the decision to terminate a pregnancy is inherently a private medical decision. While the *Roe* Court cited *Jacobson* for the proposition that the fundamental right to privacy did not completely remove conduct from state regulation, it held that states could only regulate the right when its interest became compelling and its regulations must be narrowly tailored. *Roe*, 410 U.S. at 154-56. In other words, *Roe* required state regulations to survive strict scrutiny.

15

If the right to elect a medical procedure to terminate the life of another being is a fundamental constitutional right, the right to decline a vaccination is also a fundamental constitutional right with similar roots in the Supreme Court's precedents. *See Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (holding that there is a fundamental constitutional right to refuse medical treatment). Like the right to abortion, the right to decline a vaccination is not an unlimited right, but one that is entitled to be protected by strict scrutiny.

As discussed previously, the state of federal constitutional law has changed dramatically since *Jacobson*, and, as Justice Gorsuch pointed out, courts must follow *Jacobson*'s approach to selecting levels of scrutiny and issuing rulings. Because *Philips* and the other Second Circuit cases that the Defendants rely on blindly embrace *Jacobson* as dispositive for its holding instead of what it did, they cannot control this claim.

New York State Health Regulation, Title 10, § 2.61 cannot survive strict scrutiny because there are ways where the Defendants can tailor their "solutions" for preventing the spread of COVID-19 while respecting the Plaintiffs' rights – i.e., restricting them to working with low-risk patients while testing frequently and wearing the same personal protective equipment that they did throughout the entirety of the COVID-19 pandemic. Thus, there is a substantial possibility that the Plaintiffs will prevail on this argument on appeal.

**IV.  THE RELEVANT PUBLIC INTERESTS DECIDEDLY WEIGH IN FAVOR OF THE PLAINTIFFS.**

The rights to religious freedom, privacy, and medical freedom are enshrined in the U.S. Constitution. The right to be free from religious discrimination is enshrined in Title VII of the Civil Rights Act and New York state law. The repeated efforts that society has

made to articulate the public's supreme interest in protecting religious freedom cannot be clearer. The effort that it has made to secure privacy and medical freedom is also clear.

While protecting the public health is undoubtedly an important public interest, it can only go so far. As the Supreme Court indicated in *Roman Catholic Diocese of Brooklyn v. Cuomo*, "even in a pandemic, the Constitution cannot be put away and forgotten." 141 S.Ct. 63, 68 (2020). This principle has held especially true in the context of the Supreme Court's First Amendment cases concerning religion where it has required state defendants to show that "public health would be imperiled" by less restrictive measures. *Id*. at 68.

Here, the Plaintiffs have proposed less restrictive measures. The Defendants have not appeared to rebut them, and a stay is necessary both to afford the Defendants that opportunity as well as to allow the Plaintiffs an opportunity to oppose the Defendants' assertions.

## Conclusion

For the foregoing reasons, the Plaintiffs respectfully request the Court to immediately issue injunction enjoining the enforcement of New York State Health Regulation, Title 10, § 2.61 until the Plaintiffs' appeal of the Court's order denying their motion for a temporary restraining order and a preliminary injunction is decided.

THE PLAINTIFFS
/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com

/s/ Cameron L. Atkinson /s/
CAMERON L. ATKINSON, ESQ.
*Pro hac vice pending*
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
catkinson@pattisandsmith.com

/s/ Earl A. Voss /s/
EARL A. VOSS, ESQ.
*Pro hac vice pending*
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
avoss@pattisandsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date above a copy of the foregoing was served by certified mail, email, and/or by fax upon Governor Hochul and Dr. Zucker or their proper representatives designated by law.

/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.